Case number 145549, United States of America v. Arthur Smith. Arguments not to accede 15 minutes per side. And Mr. Hawkins for the appellant. You may proceed. May it please the court, I'm Travis Hawkins on behalf of the appellant Arthur Smith. I'm Mr. Deneke for the government. I'm asking for five minutes of rebuttal. You may. Your honors, this is a criminal case tried in the Middle District of Tennessee. We tried it once and we hung the jury the first time. That was tried in front of Judge Todd Campbell. The second trial was conducted by Judge Marvin Aspen out of Illinois. Is there any particular reason they brought him down for that? I think he has grandchildren in Tennessee. This case really, my client was charged with Hobbs Act robbery and being a felon in possession of a firearm. Also with brandishing, using a firearm under 924C. He was convicted in the second trial and sentenced by Judge Aspen to 35 years in prison. So he's got a very hefty jail term he's facing. Our complaint is that the court was, the district court was overly protective of the government's key witness in this case. And we submit that the prejudice that we allege in the case is really you have a laboratory in that first trial that allows the court to see that there was what happened when the trial was conducted differently. In that case, the jury hung up and got to a standstill and Judge Campbell declared a mistrial. In this case, we allege, due to some errors by the district court, that the jury was able to arrive at a guilty verdict. We would suggest that the court unfairly tipped the scale in favor of the government. Specifically, what are you complaining about in the trial, if that is where you want to focus? Yes, Your Honor. I'll go straight to what we would say was the most severe error in the case, is that at the end of the trial, the jury was deliberating and they deliberated for about a day. They came back and asked for transcripts of two government witnesses. We objected to that on the ground that we felt like they were government witnesses. Essentially, it was about two-thirds of the government's proof in the case, these two witnesses. They were obviously adverse to the defendant and their testimony was adverse to this defendant. We suggested in the alternative that the court provide the testimony of other witnesses. We had called an optometrist to testify that the defendant was legally blind. We called an ex-girlfriend of my client who stated that the government's key witness in this case, a Tina Reed, was vindictive and that she had a grudge and that she was capable of exercising that grudge against this defendant. But the jury didn't ask for that testimony? No, Your Honor, they did not. The jury was only interested perhaps because it couldn't recall whether the testimony was conflicting or for whatever reason, the jury only needed particular portions of the testimony. That is true. That's correct. The court does have discretion, the trial court does have discretion to say no or to provide that testimony with a limiting instruction, and that was done here according to the Sixth Circuit pattern instructions. That's right, Your Honor, that was done. However, what we would say the problem here is that this engages in scale tipping, and that's really what happened here because instead of giving the whole case, the court gave basically the government's case to the jury. And this court in U.S. v. Payden and U.S. v. Rogers, both of which I've cited in our brief, has said when the jury had reported itself at a standstill, so they're back there and they're having a hard time making a decision on this case, and the court provides them not with one but with the testimony of two government witnesses. We submit that that's unfairly tipping the scale in favor of the government. This court has cautioned the district's courts with giving transcripts and testimony and reopening a case when the jury has reported itself at a standstill. And I think that the rationale behind that is that the jury is basically right there on the edge. It's a hard case, and they don't know. And I think the caution is that if you provide something, you need to be very careful about what you provide because it's going to tip the scale, and in this case it did. I would suggest that it was prejudicial and unfairly so. But both the Payden case and the Rogers case, which I've cited, one is a 1986 case and another is a 1997 case, neither one of those reversed. However, they both cited the fact that under certain circumstances, especially where the jury has said we're at a standstill, that that's the time to exercise caution. In those cases, had they, you know, standstill is an interesting word. They didn't say that we can't, you know, that we are deadlocked. They said we want to see the transcripts and we can't deliberate further until we get them. They didn't say we're deadlocked and unable to reach a decision. Is that what had happened in Payden and Henry? Had they reported themselves deadlocked in those cases? They had not reported themselves at a standstill or a deadlock. And I don't know if this is a term of art, but I would read what the jury, and it's in the record, it shows that they reported themselves, and the word is standstill. And I read that as deadlocked, Your Honor. As you said, in Payden and Rogers they said, you know, be careful, don't overemphasize, but they didn't reverse on it. Right. And so why didn't Judge Aspen do what a district judge is entitled to do, is exercise discretion? In neither of those cases was the jury at this juncture. And the courts discussed that, and the Rogers case discusses the fact that, well, this jury was not at a standstill in this case, and we thought the provision of the testimony or the transcript was okay because the jury was not at a standstill. I'm taking from that that in this circumstance where the jury is at a standstill, there's a heightened concern about it. Do we review this decision for abuse of discretion? We do. You do, Your Honor. I'll move on, unless there are other questions about that, I'll move on to the other assignment of error. Well, there are three. I'll go in descending order. The next one is our request for an addict-informant instruction. You had talked about the difference with the first trial. Did that same issue come up at the first trial? Which one? About the addict instruction. Did you get an addict instruction in the first trial? I anticipated you would ask that, and that was actually my mistake. In the first trial, I did not ask for it. The second trial, we did ask for it. Okay, so at least it's not like a difference between the two trials. In both cases, the jury got either the paid informant instruction or no instruction. Yes, Your Honor, that's right. Go ahead. So in this second issue, the government's case was essentially involved an informant who had lived on the streets. She was a drug user. She used crack. She was a tough character. Well, she had used crack, but her testimony at trial was that she was not currently using crack, and she was found with an ambient, I believe. Ambient, yes, Your Honor. If the court under those circumstances gives this addict informant instruction, isn't there a real danger that the court is telling the jury to reach a credibility determination? It's basically saying to the jury, notwithstanding what the testimony was in the case, you should ignore that and you should consider this person to be an addict. Isn't that the real danger? That's a good point, Your Honor. However, she herself said, frankly, she was contradictory. She herself, in the opening salvo, she admitted, I did this because I needed the money and I had a crack habit. That was her first expression. And then over the course of her testimony, it softened, and she backed away from that. Well, I wasn't using it that much at the time. It kind of, she was all over the map. Isn't that really the reason that you give the instruction? It's not because a person has an addiction. A person may have an addiction, but if it doesn't affect their ability to recall the events and then testify about the events, that's really key. And the real danger is that you give the jury the impression that there's something wrong with their testimony because they have used drugs in the past. Isn't that what the trial court is trying to decide? That's kind of what we, not quite so strongly, but that it's one thing if I say she's admitted that she's an addict or that she was using, had a crack cocaine habit at the time that she turned my client in. And that's a proper argument for you to make to the jury. Right. However, the addict informant instruction coming from the district judge is not advocacy. It's an admonition from the bench and therefore carries a lot more weight and in certain circumstances is not only appropriate, but necessary. And my point is it may be dangerous as well, and you would acknowledge that? I would. Yes, Your Honor. So where in the record is the instruction that the district court actually gave? The jury instructions, I believe, were cited in the brief. I saw it was cited in the government's brief on 19 to 20, but they don't have a location for where they got that, and I wasn't sure, based on your brief, where the actual instruction that was given can be found. Your Honor, it was filed as document 113 in the case. Document 113? Yes, Your Honor. Is that the instructions that were actually given? That's right. Okay. Thank you. Thank you. May it please the Court. William Denneke on behalf of the United States. Your Honor, I guess I'd like to start with this issue of the jury instruction in this case. The facts of this case are that Tina Reed, the government witness, was a... Tina's had a rough life. She's lived on the street. She has struggled with drug addiction. All of these things are true. Ms. Reed was encountered by the police on basically a disturbing the peace type incident. They found this single Ambien pill. During the course of this, she tells the police officer who's responding that she knows something about this McDonald's robbery that had taken place. And to put this in context, Your Honor, Arthur Smith had robbed many, many, many fast food restaurants. His identity was unknown to the police. He was known as the John Doe Bandit, but with the similar MO of armed robberies of fast food restaurants. He was on the Tennessee Bureau of Investigation's Top Ten Most Wanted list. There were billboards throughout the community with a photograph from this McDonald's robbery of the robber in his disguise advertising a $1,000 reward for information. Ms. Reed, when she was encountered by the police, said, I have information about this. That police officer told her to go down the next day and talk to the detectives about it. That's what she did. That information led to the search warrant, which led to the indictments. The addict informant instruction, as the court has pointed out, is basically an extreme instruction in which the court basically tells the jury to be very dubious about the credibility of this witness. It is an appropriate instruction in cases where you have a paid informant, a long-term paid drug informant. If you have the situation where the police are paying a particular drug user $500 a week to keep his eyes and ears open and feed information to the police about drug activities, there is a genuine risk that the continuing information being fed to the police by this informant may be tainted by the need for money to buy drugs. That's simply not the situation we had in this case. Tina Reed responded to a publicly advertised reward offer. She gave information on a single occasion. Several months later, she was in fact paid that publicly advertised reward money. The addict informant instruction on those facts was simply inappropriate in this case. What this court is reviewing is the extensive discretion which the law grants to a district judge to tailor the jury instructions to the facts of a case and the obligation to give instructions which fairly state the law and completely inform the jury of those instructions. That's exactly what Judge Aspin did in this case. He tailored his instruction to the facts of the case. He informed the jury that there was perhaps a citation which had been dismissed and whether or not she had received any consideration from the police with regard to dismissing a charge or not bringing a probation charge was highly contested by the government within the trial. Judge Aspin did exactly what we ask district judges to do. He tailored his instruction to the facts that were presented in the case. He properly stated the law and he properly instructed the jury. The requested instruction, does it follow a Sixth Circuit pattern jury instruction? It does, Your Honor. There is a Sixth Circuit pattern instruction for an addict informant. I apologize, Your Honor, I don't recall that instruction. I think it's in their brief, pattern instruction 706B. It looks to me that really the key paragraph of that instruction that wasn't given by the district judge here is the second paragraph about considering with more caution the testimony of addicts because of their need for drugs and so forth. So why is that not appropriate in this case? Because, Your Honor, again, when you have a situation where you have an ongoing relationship between the police and an addict and the example that comes to my mind is a drug addict who the police are paying $100 a week or $500 a month to continually feed them information about what's going on in the drug dealing community. And those payments go on week after week for an extended period of time. The information that that addict feeds to the police can be influenced by the need for drugs. But isn't this paragraph equally applicable to an individual who is a drug addict who doesn't have any relationship with the police but who, because this particular paragraph says, you should consider Tina Reed's testimony with more caution than the testimony of other witnesses. An addict may have a constant need for drugs and for money to buy drugs and may also have a greater fear of imprisonment because her supply of drugs may be cut off. And all of that's true about Tina Reed, assuming that she is a drug addict. Well, first of all, Your Honor, the fact of whether or not she was a drug addict was contested at the trial. Tina Reed testified that she was not addicted to crack cocaine at the time of the events in question. She denied vehemently that she was influenced by her need for crack or that she was even on crack at the time of these incidents. Judge Aspin did give the instruction, the remainder of that instruction, which says, and I'm just recalling off the top of my head. The instruction that he gave, so far as I understand it, is you've heard the testimony of Tina Reed that a citation was dismissed and that she received a monetary reward after her cooperation. You should consider whether her testimony may have been influenced by any such action by law enforcement. Do not convict the defendant based on the unsupported testimony of such a witness standing alone unless you believe her testimony beyond a reasonable doubt. So that's not talking about need for drugs at all. He did not, Your Honor. Again, Your Honor, Tina Reed denied that she needed money for drugs at the point in time that she reported this to the police. I'm sorry that I don't remember. Did the district judge explain that this was his reasoning for not giving the requested instruction and his reasoning for giving the citation and monetary reward instruction? As I recall, Your Honor, his reasoning was a very brief explanation. His reasoning was that the instruction requested by the defense did not match the facts of the case and that he was tailoring his instruction to what he recalled the evidence to be. Again, it would just be our position that that is the essence of the discretion which is granted to a district judge and that he did not abuse his discretion by doing so. Your Honor, with regard to the transcripts that were sent to the jury, I would only point out that the jury requested four things from the judge. They said that they requested four things and could not go forward without them. Those four things that were requested were a photograph of the defendant. Again, they did have the video of the robbery where he was wearing a disguise. They asked for a photograph of the defendant. They asked for a transcript of the closing arguments of both lawyers and they asked for the testimony of two particular witnesses. Judge Aspen properly... The two particular witnesses, according to your opponent, are the two key government witnesses. Who are the two witnesses? The two witnesses were Tina Reed, the woman we've been discussing, and the police officer, the police detective who investigated the case. And the jury got the entirety of both people's testimonies? They did, your Honor. Again, when faced with this request, Judge Aspen pretty obviously denied them the closing arguments of the attorneys on the basis that they're not evidence, denied the requested photograph of the defendant on the basis that it hadn't been admitted into evidence, but exercised his discretion to turn over the two transcripts that the jury had specifically requested. Now, in doing so, Judge Aspen met both requirements of this court, which has stated that... Well, what about the statement in Rogers, which refers to the Payden case, that the dangers are escalated if the jury makes the request after reporting an inability to arrive at a verdict? First of all, your Honor, they didn't report an inability to arrive at a verdict. They said, we want these items and we can't move forward without them. They didn't report a deadlock. They said we can't move forward without them? Well... Who knows what that means, right? I understand your point, your Honor, and I'm not going to stand here and say... Sounds like we want them and we're not going to deliberate until we get an answer. Could be, and I think that's a fair reading of their note. Counsel, these other two items that the jury requested but were not provided, those were requests that were made separately from the testimony? No, they were all made at the same time. Same time? Yes. So the jury was saying, we want four things or we're not going to proceed, or we can't proceed, or however that... Whatever we're going to do, right. The judge gave two of the four, they did move ahead. Right. Your Honor, this court has emphasized that in cases where transcripts are provided on request to a jury, that the district court must avoid two dangers, to avoid undue emphasis on those transcripts which are provided, and to avoid the danger that the jury take that testimony out of context. Judge Aspin addressed both concerns in this case. He gave them an instruction along with the transcripts that they are to consider all of the evidence in the case and they must not single out any single portion unduly. He also directed that the transcripts be prepared of the entire testimony of both witnesses, including the direct and the cross-examination, so that it wouldn't be taken out of context. Again, he has addressed this court's concerns and he, again, exercised the discretion that we grant to district judges and he did so properly and it was just not an abuse of his discretion to have done so in this manner. Unless the court has other questions. Anything else? Thank you, counsel. Thank you, Your Honor. Hawkins, you have five minutes for rebuttal. I want to mention that if there's any question about the emphasis that the jury placed on these transcripts, we can resolve that question by looking at how long it took them to return a verdict after they got them. Those transcripts went back and they promptly came back out with a verdict and they'd been deliberating for a day. How lengthy were the transcripts? I mean, that may indicate that they didn't really read the transcripts if they came back almost immediately. Maybe they were looking for one portion. Perhaps. Not too lengthy, Your Honor. I don't think either of those witnesses testified for more than an hour or two. It was essentially a one-day trial. But the jury had been deliberating for an entire day and that little piece of the scale just tilted for them when they got those transcripts. How many minutes after getting the transcripts did they come back? I believe it was within one hour, Your Honor. Tina Reed was really the focal point of the government's case and she was very problematic. She gave a lot of different... Your opponent's defense of the district judge's instruction was that it wasn't really clear that she was an addict. So what do you point to to show that it was clear that she was an addict such that that paragraph should be given? Well, she said it. She said, I needed the money. I had a crack cocaine habit, is what she said when asked, why did you turn Mr. Smith in? And that's from the record. That's what she said at one point. Then at another point she says, well, I was pretty much off it once in a while. But that wasn't the only thing that she said about her addiction, right? The judge heard both of these. That's true, Your Honor. She was all over the map. Your adversary, we can look it up in the record, but your adversary said the judge didn't say a lot, but he said something about that the pure, let's say, addict wasn't justified by the evidence. Did he say something like that? Something like that, yes, Your Honor. Which would imply that that was what he thought, which there's some support, as you say. There's something on your side, there's something on the other side. I believe that's right, Your Honor. I believe the better decision would have been to put it to the jury. That's why we give them discretion to make the not quite better decisions. Counsel, if we go back and look at your closing argument, my guess is that we're going to find that you argued to the jury pretty strongly that you should reject Tina Reed's testimony for the reasons that you're arguing here. That's right. I certainly did, Your Honor. So the jury was really taking you up on your offer in looking at that testimony. At least an argument could be made to that effect. Right. I, again, would fall back on the fact that the jury sees me as an advocate in the court. When the court gives an admonition to the jury, the jury takes that with more, they don't take it with a grain of salt as when an advocate makes those arguments. I believe the record supported the instruction, and the case that we have, some Sixth Circuit cases, United States v. Griffin, a case that Judge Boggs participated on, U.S. v. Bellark, back in 2011, and U.S. v. Luck, where the courts basically are saying, and I'll quote from U.S. v. Luck, which is 611 F. 3rd 183, when the case is close and the witness is particularly unreliable, this court has declared that the failure to give a cautionary instruction amounts to plain error. You did get a, I mean, the judge, there are two things that I would think the jury would take as big strikes against her. She was paid, and she had a charge dropped. Right. So as opposed to a case where you didn't get any kind of caution at all. What you really wanted was another caution on top of that. Right. Because, in fact, the instruction, the full instruction 7.06, isn't about don't believe this person because they're an addict. It's in a case where you have paid them and or given them a dropped charge, and they're an addict. Yes. So you got two-thirds of it. I believe that the instruction itself reflects what amounts to almost a judicial notice that crack cocaine really can destroy the way people think. In fact, there's a blank, a person who is on maybe any kind of drug. Any other things? Thank you, Mr. Hawkins. We appreciate your taking this case under the Criminal Justice Act. It's a service to our system of justice, and we do appreciate it. That case will be submitted.